■ MORRIS H. LEVINE, Respondent, v LAWRENCE JOSEPH, Appellant. — In an action to recover damages for breach of a stock purchase agreement, defendant appeals from a judgment of the Supreme Court, Nassau County (Morrison, J.), entered April 5, 1982, which, after a nonjury trial, awarded plaintiff the principal sum of $42,648.75. Judgment modified, on the law and facts, (1) by reducing the principal sum of damages awarded to $42,548.75, (2) by deleting the provision awarding interest from December 21, 1978 and substituting therefor a provision awarding interest from June 20, 1979, and (3) by adding a provision thereto directing plaintiff, upon payment of the sum awarded to him, to deliver the stock certificates in question to defendant, together with all appropriate documents necessary to effect the transfer of said stock. As so modified, judgment affirmed, without costs or disbursements, and matter remitted to the Supreme Court, Nassau County, for the entry of an appropriate amended judgment. On February 20, 1970, the parties entered into a stock purchase agreement. Under the terms of the agreement, plaintiff purchased from defendant 20,070 shares of unregistered stock in a corporation known as Hattie Carnegie Jewelry Enterprises, Ltd., now known as Carnegie Industries, Inc. Plaintiff agreed to pay the purchase price of $6,000 over a period of 10 years, during which time defendant was given an irrevocable proxy to vote plaintiff's shares. Plaintiff subsequently paid defendant $5,900; at the time of the trial, a balance of $100 was due. Pursuant to the "SEVENTH" paragraph of the agreement, defendant, who was a majority shareholder in the corporation, was to include plaintiff's shares of stock in any sale of defendant's shares of stock. Thereafter, on November 8, 1978, defendant and one Daniel Porco entered into an agreement whereby defendant agreed to sell the 277,810 shares of stock (representing approximately 55% of the outstanding stock of the corporation) owned by him to Porco. The agreement did not provide for the sale of the shares of stock owned by plaintiff. As a result of his agreement with Porco, defendant was to receive 75 cents per share, for a total purchase price of $208,357.50. In addition, for a period of five years defendant was to retain his position as president of the corporation, pursuant to an employment contract, at an annual salary of $80,000, plus reimbursement for expenses (in the sum of $16,200 per year). After plaintiff learned of defendant's agreement with Porco, plaintiff unsuccessfully attempted to sell his shares of stock. Thereafter, on or about October 16, 1979, plaintiff commenced the instant action against defendant seeking to recover damages for his breach of their agreement. The trial court, in awarding judgment to plaintiff, stated, in relevant part, as follows: "The evidence offered at trial established a binding agreement between the parties, a breach of the agreement by the defendant and resulting damages to the plaintiff. The defendant did not establish any defense to plaintiff's cause of action. The plaintiff is entitled to recover from the defendant the damages he sustained. Plaintiff is entitled to recover the fair price of the stock he would have sold had the defendant adhered to the terms of the agreement and included plaintiff's stock in the sale to Porco. However, any assessment of damages in this proceeding is not entirely free from doubt. The defendant received $.75 per share from his private sale. This cannot be considered fair market value since the defendant received other consideration for his holdings, including retention of his corporate position, at a salary of $80,000.00 per year. The actual value of the stock is the 'over the counter' bid price of October 6, 1978. This price, only one month prior to the date of the agreement between defendant and Porco, was 2-1/8 per share. Plaintiff is entitled to judgment against the defendant in the sum of $42,648.75, with interest from December 21, 1978, the date defendant transferred the stock pursuant to the sales agreement with Porco, and costs and disbursements." On his appeal, defendant contends that the trial court committed reversible error by refusing to permit

him to testify concerning a March, 1979 telephone conversation between defendant and one Gary Eder, a stockbroker. Defendant asserts that his testimony concerning the conversation was crucial to establish his defense that plaintiff, through Eder, had specifically requested that his shares not be sold along with those of defendant. We disagree. At trial, plaintiff specifically denied that he ever requested Eder to call defendant. Eder himself denied that he had a telephone conversation with defendant in March of 1979, relating to plaintiff's stock or that plaintiff had ever authorized him to speak with defendant with respect to the termination of the agreement defendant had with plaintiff. Thus, even if the purported telephone conversation had taken place, there is no evidence that Eder was plaintiff's agent for the purpose of relieving defendant of his obligations under his agreement with plaintiff (see *Hirsch v Badler,* 3 AD2d 921). In addition, defendant challenges the manner in which the trial court assessed damages against him. In our opinion, the trial court's determination with regard to damages was proper in view of the evidence presented at trial. Plaintiff testified that, based upon a daily quotation sheet from the National Quotation Bureau, Inc., the bid price for Carnegie Industries, Inc., stock on the over the counter market was $2.125 per share as of October 6, 1978, which was the last time the stock was traded prior to the November 8, 1978 agreement between defendant and Porco. Plaintiff, a certified public accountant, who had extensive experience in the field of securities, further testified that defendant had actually received $2.56 per share when the per share value of his salary and fringe benefits were added to the purchase price of 75 cents per share. Defendant failed to introduce any evidence bearing on the value of plaintiff's shares or how a value should be computed. "Since [defendant's] breach has made difficult a more precise proof of damages, [he] must bear the risk of uncertainty created by [his] conduct * * * Mere dispute on the validity of some of the figures cannot wipe out the evidence but merely emphasizes that the [trial court] was presented with a factual question whose determination we should not change" (see *Lee v Seagram & Sons,* 552 F2d 447, 455-456). Nevertheless, certain modifications to the judgment are warranted. As plaintiff conceded that $100 was owed to defendant, based upon their agreement, we find that the principal sum of the damages awarded should be reduced by $100. Further, interest should have been computed from June 20, 1979, which, as established by the record, is the actual date defendant transferred his stock to Porco, pursuant to the November 8, 1978 agreement (see CPLR 5001, subd [b]; *Gelco Bldrs. v Simpson Factors Corp.,* 60 Misc 2d 492; *Sahley v McKee,* 371 F2d 720). Finally, since plaintiff has been awarded damages representing the value of his shares of stock, it would be inequitable for him to also retain possession of the shares of stock in question. Accordingly, upon payment to plaintiff of the sums due pursuant to the amended judgment to be entered in the Supreme Court, Nassau County, plaintiff is directed to deliver to defendant his shares of stock, together with all appropriate documents necessary to effect the transfer of said stock to defendant. We have considered defendant's other contentions and find them to be without merit. Damiani, J. P., Mangano, Gibbons and Gulotta, JJ., concur.